

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

——————————————————————X

EDMUND OROK EDEM

    Plaintiff

**08 — 2597**

COMPLAINT

Against

JURY TRIAL DEMANDED

**DEARIE, CH. J.**

ETHIOPIAN AIRLINES ENTERPRISE

ETHIOPIAN INSURANCE CORPORATION

**BLOOM, M.J.**

ETHIOPIAN GOVERNMENT (FEDERAL DEMOCRATIC REPUBLIC OF ETHIOPIA)

    Defendants

RECEIVED

JUN 3 0 2008

PRO SE OFFICE

——————————————————————

Plaintiff EDMUND OROK EDEM, hereby allege as follows:

### NATURE OF THE CASE

1.    This is an action brought by the plaintiff to recover his money arbitrarily and unlawfully seized by the defendants from the plaintiff while he was transiting through Addis Ababa, Ethiopia on his way to Lagos, Nigeria, on an Ethiopian Airlines Enterprise's plane.

2.    Ethiopian Airlines Enterprise (EAE) failed to inform the plaintiff of the existing Ethiopian Customs and Banking laws when the plaintiff made the reservation, purchased the ticket and while inside the plane en route to Ethiopia. Neither did EAE issue any Customs Declaration forms to the plaintiff as per the acceptable norms of modern international cross boundary air travel.

3.      There has been a history of seizures by the Ethiopian authorities prior to this incident, which the Managing Director of EAE, Mr. Girma Wake, was aware of. Yet, EAE knowingly and deliberately deceived the plaintiff by an act of omission of failing to inform or warn the plaintiff beforehand. EAE also abandoned the plaintiff in Ethiopia after he had been unlawfully brought back into Ethiopia by Ethiopian authorities. Ethiopia detained the plaintiff unlawfully, by denying him the right to leave Ethiopia contrary to International laws, until intervention by the Nigerian Embassy.

4.      It is note worthy that the same Ethiopian Airlines on approaching United States airspace, announces and issues Custom Declaration forms to passengers in their plane. It does this also when entering Nigerian airspace, but deliberately omits to do this while entering Ethiopia. There was thus active concealment by Ethiopia about their Custom and Banking regulations beyond mere silence, thus leading to the entrapment of the plaintiff by Ethiopian authorities.

## JURISDICTION AND VENUE

5.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1352 and the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. §s 659, 1951, 1961 et seq.)

6.      This action arises under the Treaties of the United States, more particularly under the Convention for the Unification of Certain Rules for international Carriage by Air signed at Montreal, 28 May 1999 and which went into effect on November 4, 2003 (the Montreal Agreement") and the convention for the Unification of Certain Rules relating to international Carriage by air, signed at Warsaw on 12 October 1929 (as amended, the "Warsaw Convention")

7.      Ethiopia under the United States Foreign Air Carrier Conditions of Authority has agreed that the conduct of its operations shall constitute a waiver of sovereign immunity, for the purposes of 28 U. S. C. § 1605 (a) with respect to those actions or proceedings instituted against it in any court or other tribunal in the United States that are (I) based on its operations in international air transportation that according to the contract include a point in the United States

as a point of origin, point of destination, or agreed stopping place, or for which contract of carriage was purchased in the United States; or (2) based on a claim under any international agreement or treaty cognizable in any court or other tribunal of the United States.

8.   This case is also brought under the 49 U.S.C. § 41712, which prohibit unfair and deceptive practices and violate the consumer protection provisions of 14 C.F.R. 212 and 14 C.F.R. 380.

9.   This Court has jurisdiction pursuant to 18 U.S.C. § 1001.

10.  This Court has jurisdiction pursuant to 28 U.S.C. § 1350 Alien Tort Statute.

11.  This court has pendant and ancillary jurisdiction over all other causes of action alleged herein. Venue is proper because the plaintiff resides within the Eastern District of New York, bought and paid for the ticket within the court's jurisdiction and the journey originated from Newark airport and ended at Newark airport.

## PARTIES

12.  Plaintiff Edmund Orok Edem, resides in Staten Island, New York and purchased a ticket from EAE for a round trip from Newark Airport to Washington, DC, Addis Ababa, Lagos and back to Newark. Plaintiff is a permanent resident of the United States. His purpose for travelling was to carry out a building project with money withdrawn from his bank.

13.  The defendant Ethiopian Airline Enterprises is wholly and totally owned by the Ethiopian State and is located at 277 South Washington Street, Suite 120, Alexandria, VA 22314.

14.  The Ethiopian Insurance Corporation is wholly and totally owned by the Ethiopian government and is located at P. O. Box 2545, Addis Ababa, Ethiopia.

15.  The Federal Democratic Republic of Ethiopia is an East African country. The Ministry of Foreign Affairs of Ethiopia represents it. The Ethiopian Airlines Enterprise (EAE) is wholly owned by the federal government of Ethiopia, there are no shares and no par value. Ethiopian Insurance Corporation (EIC) is wholly owned by the federal government of Ethiopia, there are no shares and no par value. EIC provides insurance coverage for

2

EAE. The three defendants listed above are one and the same and would henceforth sometimes be referred to as Ethiopia.

## JURY TRIAL DEMAND

16.     Plaintiff demand trial by jury on all claims.

## FACTUAL BACKGROUND

17. Plaintiff embarked on a journey from New York to Lagos, Nigeria via Addis Ababa, Ethiopia on an Ethiopian Airlines plane. Prior to this, the plaintiff had withdrawn the sum of seventeen thousand dollars from his savings account held in Victory State Bank, Staten Island, New York. Plaintiff declared the sum of sixteen thousand five hundred dollars, to the United States Customs at Washington D.C Dulles International Airport, at the start of the trip.

18. On my way to board the plane to Lagos, Nigeria, an Ethiopian official asked me what was in my pocket, and I replied my money. The Ethiopian official then asked me to accompany him to their office. He attempted to take me out of the airport through an illegal route and was rebuffed by the official manning the gates and told to process me through immigration before taking me back into Ethiopia since my passport had been stamped seen on exit. This official refused and still took me out without processing me through their immigration according to international laws. I was asked to produce the money, which I did, thinking all these while that they were only interested in confirming the source of my money. The sum of fourteen thousand six hundred dollars was counted. The official returned one thousand dollars to me and seized thirteen thousand six hundred dollars. He then brought out a form for me to fill for the said sum and issued a temporary receipt of custody of my money to me. I asked them what was going on, as I was about to miss my flight. I was then threatened by one officer, Mr. Joseph Ayutu and told to leave Ethiopia immediately or I will be shot or some harm will befall me. When I attempted to leave, I could not because the Ethiopian immigration denied me freedom to leave, as technically I was not in Ethiopia having been stamped exit on my passport.

19. Plaintiff then approached the Nigerian Embassy in Ethiopia to complain, and was taken to the Ethiopian Customs office, where their legal representative told us that he does not know the law of seizure since it was a Banking regulation and not a Customs law. On being asked what the procedure for retrieving my money was, I was told that there was no such thing and the seizure was final. Ethiopia has thus falsely lured me into its country through misrepresentation, falsity and reckless disregard for all international norms of air travel, in order to rob me of my hard-earned money. There was actual intent by defendants to induce plaintiff's inability to declare the money on him.

20. Ethiopia shared a common purpose in the conduct of their airline business, they make financial gain from this joint venture or private enterprises. Ethiopia not only provides flight services but also acts as its ticket-selling agent. It did not at any time inform the plaintiff of Ethiopia's banking or custom rules at the time of reservation and ticketing. Plaintiff submits that his declaration at the US Customs proves that he could have done the same with the Ethiopian Customs, if the information and necessary form had been made available.

21. Ethiopia caused harm to plaintiff's economic interest by seizure of the plaintiff money and prevented him from using such money to pursue his building project in Nigeria. Ethiopia did not, at any time prior to the journey or during the journey announce, nor inform the plaintiff of Ethiopian Banking and custom regulations, nor did they issue currency declaration forms to the plaintiff or any other passenger through out the flight, and on approaching Ethiopia.

22. Ethiopia thus unlawfully detained the plaintiff contrary to international law for forty days within its territory. The intervention of the Nigerian Embassy to the Ethiopian Foreign Ministry forced their legal officer Mr. Menelik Alemu, to send a letter to the Ethiopian immigration authorities to regularize my stay and allow me to depart.

23. After forty days in Ethiopia, I then departed for Lagos to look for my luggage. I spent three nights in Lagos and could not retrieve my luggage. Thus Ethiopia succeeded in stealing my money and dispossessed me of my luggage. Ethiopia also stopped me from carrying out the

purpose of my trip and cost me fifty-four days of work, (I work as a veterinary consultant and an independent contractor) along with the cost of my ticket, hotel fares, ground transportation and communication within Ethiopia and Nigeria.

## CAUSES OF ACTION

### COUNT 1

(Conspiracy) (As against Ethiopian Airlines Enterprise and Ethiopian government)

24. Plaintiff realleges each allegation in each of the paragraphs above as is fully set forth herein.

25. Plaintiff alleges that upon information and believes the Ethiopian State is in dire need of foreign exchange, due to the discovery of fake gold in the Ethiopian National Bank. This has led to loss of confidence in the Ethiopian monetary system, resulting in the international financial bodies request for Ethiopia to back up its payment that was anchored on its gold reserve, with cash.

26. As can be seen in the plaintiff's movement of cash to Nigeria, the Nigerian economy is cash based the banks are not efficient and frequently go on strike. Along with frequent light outage resulting in a fractious banking system. It is thus quicker for someone to hold on to his cash to transact business in Nigeria.

27. Ethiopia has noticed the amount of money being carried by her Nigerian passengers through their airline and has concocted this trap to steal from these passengers. Ethiopian Airlines and Ethiopian authorities have engaged as co conspirators in a continuing agreement, understanding and conspiracy to operate a racketeering enterprise to lure unsuspecting passengers through their airports only to turn around and dispossess these people of their money.

28. In formulating and effectuating the alleged enterprise, combination, or conspiracy, defendants Ethiopian Airlines and the Ethiopian government as co-conspirators engaged in deceptive practices the purpose of which is aimed at stealing money from passengers.

29. Upon information and belief, these activities are - The Ethiopian Airline does not inform passengers going through Addis Ababa of Ethiopian Customs or Banking Regulations. This would be confirmed by a reply sent to me by one Hailemelekot Mamo, of EAE. He acknowledges the fact that "custom and immigration authorities use the airline media to communicate information on destination airport / country requirement on immigration and customs requirement." Why did Ethiopian Airlines not announce the custom requirement but only did the immigration requirement? Mr. Mamo continued: " As a further step back, is also communicated to passengers when and if the information is available by the destination nation / country at the time of reservation and ticketing." Was this information available to Ethiopian Airlines at the time of reservation and ticketing? Why did it not make it available to passengers? Mr. Mamo concluded: "Furthermore, in a recent release by Custom Authorities, [Ethiopian] we have learnt that they are also planning to distribute customs declaration forms on board our services to have a better and transparent communication...." This communication between an official of Ethiopian airlines and the plaintiff, confirms that Ethiopia never communicated nor issued Customs Declaration forms to the plaintiff.

30. It must be re-emphasized that Ethiopian Airlines Enterprise (EAE) is wholly owned by the Ethiopian State. Infact their Foreign Minister, Mr. Seyoum Mesfin, is the Head of the Board of Directors of Ethiopian Airlines Enterprise.

31. As a direct and proximate result of defendants' Ethiopian Airlines Enterprise and the Ethiopian government's unlawful conduct, the plaintiff has suffered and is entitled to compensatory damages, in an amount to be proven at trial.

**COUNT II**

(Misfeasance) (As against Ethiopian Airlines Enterprise) 18 U.S.C. § 1001, 49 U.S.C. § 41712, 14 C.F.R. 212 and 14 C.F.R. 380.

32. Plaintiff realleges each allegation in each of the paragraphs above as is fully set forth herein.

33.   Upon information and belief, Ethiopian Airlines supplies the necessary custom or currency declaration forms to passengers on getting to Lagos (Nigeria) and Washington D.C. (United States) Ethiopian Airlines Enterprise and Ethiopian government are one and the same entity as one is owned by the other. Ethiopia thus failed to perform an obligatory and customary requirement of informing the plaintiff of her laws, thereby deliberately leading the plaintiff to be entrapped by another arm of her service.

34.   This notification requirement which is the hallmark of all civilized nations was performed in the breach and intentionally below standard. Infact it was not performed at all, leading to a violation of 14 C.F.R.'s 212, 380 consumer protection and 49 U.S.C. § 41712, deceptive practices provisions of the United States.

35.   18 U.S.C. § 1001 establishes fines and or prison terms for willfully covering up or falsifying material facts or making false or fraudulent statements within the jurisdiction of the United States.

**COUNT III**

(Violation of the Racketeer and Corrupt Organizations Statute, 18 U.S.C. S §s 1951[1][3], 1962)

36.  Plaintiff realleges each allegation in each of the paragraphs above as if fully set forth herein.

37.  Upon information, belief and personal experience, the defendants and their agents unlawfully, willfully and knowingly did combine, conspire, confederate and agree to conduct and participate, directly indirectly, in the conduct of entrapping transit passengers including the plaintiff and after unlawfully taking the sum of thirteen thousand six hundred dollars from the plaintiff, then threatened him with bodily harm, if he did not exit the territory of the defendants.

38.  The said money originated from the United States, was declared to the US Customs, and was meant for commercial building purpose and trade with the United States.

39.  EAE having been in business for over sixty years knows and understands the implication of Ethiopia's "Customs Authority Regulation" and its effect on her customers.

o

40. Its apparent silence in not transmitting this information to its passengers denote at least two predicate acts of racketeering, or in the alternative both EAE and the Ethiopian State each knew and intended to further the scheme or the illegal acts within the scheme.

41. The predicate acts of racketeering include but are not limited to the following: (a) 18 U.S.C. § 1962(a) Ethiopia does utilize proceeds from this State sponsored robbery in its economic development programs. In fact the head of Ethiopian Customs told a Nigeria Embassy official that these acts were means of acquiring revenue for the State! The Ethiopian State has used over one million dollars seized in this fashion from the operation of the racketeering enterprise, which it participated as principal and co conspirator. (b) 18 U.S.C. § 1962 (c) Ethiopian State and Ethiopian Airlines thus knew the scope of the conspiracy and knowingly agreed to participate in the affairs of the enterprise through a pattern of racketeering activity, in order to boost their foreign exchange earnings. Through the conduction or direct participation in the conduct of this entrapment racketeering activity, by not informing passengers of Ethiopia's law and luring them to be entrapped and robbed by Ethiopian officials. These predicates have been occurring over time as the record and history of seizures would show at trial.

42. In furtherance of this scheme Ethiopian Airlines Enterprise (EAE) was associated as its primary manager, as it deliberately withheld information from the plaintiff and violated:

(a) 18 U.S.C. § 1962 (c) by conducting or participating directly in the conduct of the racketeering activity by, *inter alia*, on numerous occasions fraudulently enticed the plaintiff to buy Ethiopian Airlines tickets through the mail, internet and interstate wire without informing the plaintiff of the existing Custom regulations in Ethiopia concerning currency. Each mailing, use of commercial interstate carrier or wiring constitutes separate acts of racketeering in violation of 18 U.S.C. § 1341 and § 1343, These related predicates occurred over a period of several months as the plaintiff bought his ticket in March 2008 using a credit card and actually traveled in May 2008.

(b) 18 U.S.C. § 1962(a) by using, investing, directly or indirectly, proceeds from the operation of the racketeering enterprise which were received from a pattern a pattern of racketeering which the defendant participated as principal by not informing plaintiff of Ethiopian laws thereby leading to the violations of 18 U.S.C. § 659, embezzlement from interstate or foreign commerce, 18 U.S.C. § 1341, mail fraud and swindles and 18 U.S.C. § 1343, wire fraud as detailed herein; and/or:

(c) 18 U.S.C. § 1962 (b) by acquiring and/or maintaining an interest in or control of the racketeering enterprise by a pattern of racketeering activity consisting of numerous violations of 18 U.S.C. § 659, embezzlement from interstate or foreign commerce, 18 U.S.C. § 1341, mail fraud and swindles and 18 U.S.C. § 1343, wire fraud; and/or

(d) 18 U.S.C. § 1962(d) by conspiring with the Ethiopian government to violate any of the provisions of 18 U.S.C. § 1962 and/or aiding and abetting in the commission of at least two predicate offenses which were part of the pattern of racketeering in violation of the common law of aiding and abetting.

43. In furtherance of the scheme the Ethiopian government as owners of EAE was associated with the racketeering enterprise and violated:

(a) 18 U.S.C. § 1962 (c) by conducting or participating directly in the conduct of the racketeering activity by, *inter alia*, on numerous occasions fraudulently enticed the plaintiff to buy Ethiopian Airlines tickets through the mail, internet and interstate wire without informing the plaintiff of the existing custom regulations in Ethiopia concerning currency. Each mailing, use of commercial interstate carrier or wiring constitutes separate acts of racketeering in violation of 18 U.S.C. § 1341 and § 1343, These related predicates occurred over a period of several months as the plaintiff bought his ticket in March 2008 using his credit card and actually traveled in May 2008.

(b) 18 U.S.C. § 1962(a) by using, investing, directly or indirectly, proceeds from the operation of the racketeering enterprise which were received from a pattern a pattern of racketeering

which the defendant participated as principal by not informing plaintiff of Ethiopian laws

thereby leading to the violations of 18 U.S.C. § 659, embezzlement from interstate or foreign

commerce, 18 U.S.C. § 1341, mail fraud and swindles and 18 U.S.C. § 1343, wire fraud as

detailed herein; and/or:

(c) 18 U.S.C. § 1962 (b) by acquiring and/or maintaining an interest in or control of the

racketeering enterprise by a pattern of racketeering activity consisting of numerous violations

of 18 U.S.C. § 659, embezzlement from interstate or foreign commerce, 18 USC 1341, mail

fraud and swindles and 18 U.S.C. § 1343, wire fraud; and/or

(d) 18 U.S.C. § 1962(d) by conspiring with the Ethiopian Airlines to violate any of the provisions

of 18 U.S.C. § 1962 and/or aiding and abetting in the commission of at least two predicate

offenses which were part of the pattern of racketeering in violation of the common law of

aiding and abetting.

44. As a direct and proximate result of the violation of 18 U.S.C. § 1951 and 18 U.S.C. § 1962 by

Ethiopian Airlines and Ethiopian government described herein, plaintiff has been and

continued to be, injured in his business and property, in an amount to be determined at trial

but, to be trebled pursuant to 18 U.S.C. § S 1964© and cost incurred in this litigation.

**COUNT IV**

(Conversion) (As against Ethiopian Airlines Enterprise and the Ethiopian government)

45. Plaintiff realleges each allegation in each of the paragraphs above as if fully set forth herein.

46. Plaintiff has paid a valuable consideration for the ticket purchased from the defendants, the

cost of his extended stay in Ethiopia, the loss of his money seized by the defendants, the loss of

his luggage by the defendants, the cost of his extended stay to seek his luggage in Lagos, Nigeria.

The total inability of the plaintiff to carry out the purpose of his journey which cost him fifty-four

days and the sheer brigandage of the Ethiopian State coupled with his unlawful detention in

Ethiopia has caused untold harm to the plaintiff.

47. Defendant's unilateral and arbitrary confiscation of the plaintiff's money has deprived plaintiff of the use, benefit and enjoyment of the proceeds of a valuable property interest and constitutes unlawful conversion.

**COUNT V**

(Unjust Enrichment) (As against Ethiopian government and Ethiopian Airlines Enterprise)

48. Plaintiff realleges each allegation in each of the paragraphs above as f fully set forth herein.

49. Plaintiff has paid a valuable consideration for the tickets purchased from defendants for the purpose of traveling in order to achieve a commercial objective. Also plaintiff has worked hard to save the money stolen by the Ethiopian authorities. Plaintiff has been deprived of the value of his ticket and money.

50. Defendants' Ethiopian government and Ethiopian airlines have had an unearned benefit conferred on them by their failure to allow the plaintiff travel on time. Ethiopian Airlines even charged the plaintiff fifty dollars more than the required amount in order to re issue another set of tickets since the plaintiff had been stopped from travelling by the Ethiopian state.

**COUNT VI**

(Vicarious Liability) (As against Ethiopian Airlines Enterprise and Ethiopian government)

51. Plaintiff realleges each allegation in each of the paragraphs above as if fully set forth herein.

52. Ethiopian Airlines Enterprise belongs to the Ethiopian government and is a public enterprise or joint venture for profit with respects to the flight from Newark, through Washington, D.C., Addis Ababa to Lagos and back.

53. Each member of this venture is vicariously liable for the tortuous conduct of the other members committed in the scope and course of the affairs of the venture. The fact that Ethiopian authorities did not ask, or omitted to ask, or deliberately refused to ask EAE to inform passengers of their laws, or, the fact that EAE refused to inform, or omitted to inform, or forgot to inform plaintiff of Ethiopia's Custom regulations, makes EAE liable for the harm caused to the plaintiff.

**COUNT VII**

(Punitive Damages)(As against Ethiopian Airlines Enterprise and Ethiopian government)

54. Plaintiff realleges each allegation in each of the paragraphs above as if fully set forth herein.

55. Ethiopian Airlines and Ethiopian government acted with malice, fraud, gross negligence and/or oppression including threat of bodily harm, which was not a product of fact or law, honest error of judgment, overzealousness, mere negligence or other human failing.

56. The defendants' actions are so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

57. An award of punitive damages is necessary to punish defendants Ethiopian Airlines and government and to deter others from the same or similar conduct.

**COUNT VIII**

(Action on Bond) (As against Ethiopian Insurance Corporation)

58. Plaintiff realleges each allegation in each of the paragraphs above as if fully set forth herein.

59. Ethiopian Insurance Corporation issued a bond and insurance policy guaranteeing Ethiopian Airlines performance of their obligations and duties to the plaintiff. Ethiopian Airlines failed to warn the plaintiff of the existing rules in Ethiopia thereby failing to perform these obligations.

60. Ethiopian Insurance Corporation is liable to the plaintiff to the extent of the value of the bond and/or insurance for Ethiopian Airlines failure to inform and educate plaintiff.

**COUNT IX**

(Breach of duty of good faith and fair dealing) (As against Ethiopian Airlines Enterprise)

61. Plaintiff realleges each allegation in each of the paragraphs above as if fully set forth herein.

62. EAE knew beforehand that the Ethiopian authorities are seizing their passengers' money. There was a recorded seizure in the last quarter of 2007, which the Nigerian government intervened and which the Managing Director of Ethiopian Airlines, Mr. Girma Wake was

personally aware of. Yet they took no action to warn other passengers. The Ethiopian Airlines and government did this for their financial gain.

63. EAE's action or inaction is a breach of their implied duty of good faith and fair dealing with regard to their contractual relationship with plaintiff.

**COUNT X**

(Detrimental reliance) (As against Ethiopian Airlines Enterprise)

64. Plaintiff realleges each allegation in each of the paragraph above as if fully set forth herein.

65. Ethiopian Airlines Enterprise, by contracting, or purporting to contract, to convey plaintiff and his baggage from various ports in the United States to Lagos, Nigeria made an implied promise to delivery the luggage of the plaintiff safely to him in Lagos.

66. Plaintiff relied to his detriment on this promise.

67. Plaintiff reliance on EAE's promise was reasonable, foreseeable and intended by EAE.

68. As a direct and proximate result of plaintiff's reliance on Ethiopian Airlines promise, the plaintiff has suffered the loss of his baggage and is entitled to compensatory damages in an amount to be proven at trial.

**COUNT XI**

(Negligence) (As against Ethiopian Airlines Enterprise)

69. Plaintiff realleges each allegation in each of the paragraphs above as if fully set forth herein.

70. Ethiopian Airlines is a common carrier and as such owed the plaintiff both a duty of utmost care and the vigilance of a very cautious person towards the plaintiff. Ethiopian Airlines is responsible for even the slightest negligence and was required to do all that was humanly possible, including using care, vigilance, and foresight to ensure that this incident did not occur. Especially when it's Managing Director had been made aware that the Ethiopian State was confiscating money belonging to his passengers. Yet he and his agents failed to warn plaintiff about the relevant laws of Ethiopia. This failure, even though they have a prevailing custom of doing this when landing in other countries, shows gross and criminal negligence.

71. As a direct and proximate result of EAE's negligent conduct the plaintiff is entitled to compensatory damages, in an amount to be proven at trial.

**COUNT XII**

(Arbitrary Arrest and detention)(As against the Ethiopian government) 28 U.S.C. § 1350

72. Plaintiff realleges each allegation in each of the paragraphs above as if fully set forth herein.

73.   The Ethiopian state official who took me back into Ethiopia without first of all canceling the exit stamp on my passport violated customary international law because this led to a Kafkaesque situation in which I was not allowed to depart Ethiopia, since I was not officially in Ethiopia. This unlawful detention which was resolved at the intervention of the Nigeria Embassy cost me a lot of money as I had to pay for hotels, transportation and communication, apart from the stress and undue emotional suffering involved.

74. The United States and Ethiopia are parties to International Treaties with respect to international air travel, including the Warsaw Convention.

75. EAE is a carrier certified by the US Department of Transportation under FAR 21 and is a carrier pursuant to the terms of the Warsaw Convention and Montreal Agreement.

76. Tickets issued to the plaintiff by EAE identify it as the carrier pursuant to the terms of the Warsaw Convention and purport to limit EAE's liability pursuant to the terms of the Warsaw Convention. (Plaintiff contends that the EAE and Ethiopian government's liabilities are not so limited.)

77. An award of money damages, the amount to be determined at trial is necessary in order to deter Ethiopia or any other country from exhibiting this sort of atavistic behavior in future.


**WHEREFORE**, Plaintiff pray:

1. As to all counts of the complaint, that Plaintiff is awarded actual damages shown with costs and interest from the date of the incident.

2. On count three of the complaint, that this Court adjudge the aforesaid conduct by defendants
   Ethiopian Airlines Enterprise and Ethiopian government to be in violation of the Racketeer
   Influenced and Corruption Organizations Acts (18 U.S.C. §s 1951, 1962 et seq.); and grant
   plaintiff an award of three times their actual damages to be proven at trial as a result of
   defendant's violation of the RICO laws including costs plus interest from date of incident.

3. On count seven and twelve of the complaint, that plaintiff is awarded punitive damages to the
   tune of nine hundred and ninety nine thousand dollars with interest from the date of the
   incident.

4. On count eight this Court issue the necessary order binding the insurance carrier (in
   whatsoever named called and wherever located) for Ethiopian Airlines Enterprises.

5. That this Court awards plaintiff all costs and moneys lost and spent by him during the course
   of the said journey and litigation with interest from the date of the incident.

6. That this Court grants such other relief as it determines to be just and equitable.


Respectfully submitted

Edmund Orok Edem

P. O. Box 40745

Staten Island, New York 10304

1 718 815 2725

allmancorp@yahoo.com


Dated this day of June 30, 2008